IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADFORD TECHNOLOGIES, INC,<br><br>Plaintiff,<br><br>v.<br><br>NCV SOFTWARE.COM, et al.,<br><br>Defendants. | No. C 11-04621 EDL<br><br>**ORDER GRANTING MOTIONS TO DISMISS** |

Pending before the Court are: (1) Defendant Metro National Financial LLC's ("Metro Financial") Renewed Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 75); and (2) Defendant Rodney Newman's Renewed Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 74). For the reasons set forth below, the Court grants these motions and dismisses Defendants Metro Financial and Newman without prejudice.

**I.    Background**

   A.   First Amended Complaint Allegations

Plaintiff Bradford Technologies, Inc.'s first amended complaint ("FAC") alleges: (1) breach of contract and (2) trade libel against Defendant John David Biggers, as well as (3) misappropriation of trade secrets, (4) copyright infringement, (5) unjust enrichment, (6) intentional interference with prospective economic advantage, (7) unfair competition, and (8) injunctive relief against Defendants NCV Software ("NCV"), Metro Financial, Karma Technologies, LLC ("Karma"), Rodney Newman, and John David Biggers. The FAC alleges that Plaintiff and Biggers executed an employment agreement in November 2007 to secure Biggers' services as a computer programmer to develop software for Plaintiff. (FAC ¶¶ 17-18.) The agreement contained, among other things, confidentiality and non-compete clauses and terms relating to ownership and assignment of work.

1  (Id. ¶ 19, Ex. A.)  As part of this agreement, Biggers was given source code for Plaintiff's software
2  programs and Plaintiff's entire customer list.  (Id. ¶ 21.)  Unknown to Plaintiff, Biggers was
3  developing software programs identical to Plaintiff's, using Plaintiff's source code.  (Id ¶ 22.)
4  Biggers attempted to undermine and delay development of Plaintiff's software by refusing to make
5  necessary changes, only to incorporate the changes into his own software.  (Id. ¶ 23.)  Biggers also
6  solicited Plaintiff's customers to purchase Defendant NCV's NHStats software on September 7,
7  2009.  (Id. ¶¶ 26-27.)  Biggers was terminated the same day, and later signed a Stay of Litigation
8  agreement.  (Id. ¶¶ 24, 29-30.)

9  According to the FAC, Biggers also used misappropriated trade secrets and source code to
10 develop appraisal software for Defendant Karma known as "Canvas."  (Id. ¶ 34.)  On the Canvas
11 website, Karma acknowledged Biggers and NCV for contributions to the development of Canvas.
12 (Id. ¶ 35, Ex. F.)  The FAC alleges that Defendant Metro Financial's address is the same Utah
13 address as that of Canvas and Karma.  (Id. ¶ 36.)  The Canvas website also lists as contacts "Metro
14 National Financial, Rodney Newman, President . . . Rod@metrocolose.com."  (Id. ¶ 39.)  An article
15 on the website "mortgageorb.com" stated that Metro Financial "released an updated version of its
16 Canvas proprietary valuation software."  (Id. ¶ 38, Ex. I.)  The FAC further alleges that Biggers
17 acted in conjunction with Karma, Metro Financial and Newman to solicit Plaintiff's clients to
18 purchase Canvas, which was developed by Defendants, to benefit all Defendants.  (Id. ¶¶ 57-58, 66.)

19   B.  <u>Evidence Regarding Metro Financial and Newman</u>

20 In support of their motions to dismiss, Defendants Metro Financial and Newman submitted
21 the declaration of Kathy McGeary, the manager of Metro Financial, three declarations of Newman,
22 the president of Metro Financial, and the declaration of Richard Frank, the director of operations of
23 Defendant Karma.  Plaintiff, in opposition, submitted the declaration of Jeff Bradford, the owner and
24 president of Plaintiff, and a Request for Judicial Notice of certain documents.  According to
25 Defendants' declarations, Metro Financial is a Delaware holding company registered to do business
26 in the state of Utah that maintains its principal place of business in Salt Lake City.  (McGeary Decl.
27 ¶¶ 3-4, 9; 11/21/11 Newman Decl. ¶ 4; 12/9/11 Newman Decl. ¶ 5.)  Metro Financial is not
28 registered to do business in California, does not have an agent for process in California, has no

2

mailing address, office, or employees in California, owns no real property in California, and pays no California taxes. (McGeary Decl. ¶ ¶ 4-7, 9; 11/21/11 Newman Decl. ¶ 5; 12/9/11 Newman Decl. ¶ 7.) Metro Financial is a holding company for Metro National Valuation, LLC ("Metro Valuation"), Metro National Settlement Services, LLC, and Metro National Field Services, LLC, which are Delaware companies. (11/21/11 Newman Decl. ¶ 7.) These three companies offer their clients the ability to use MetroClose, an online vendor management software program, and use metroclose as a domain name. (11/21/11 Newman Decl. ¶¶ 8-9.) Newman uses the email address at MetroClose.com in connection with his duties at these companies. (11/21/11 Newman Decl. ¶ 9.) Defendant Metro Financial does not use the MetroClose software or the metroclose domain name. (11/21/11 Newman Decl. ¶ 10.)

Metro Financial does not oversee, maintain, or administer the Canvas website; its subsidiary Metro Valuation does. (11/21/11 Newman Decl. ¶ 12.) Metro Valuation is a licensee of the Canvas software "powered" by Karma. (11/21/11 Newman Decl. ¶ 17; 11/15/2012 Newman Decl. ¶ 7; Bradford Decl. ¶ 12.) Karma's sales of Canvas to customers located in California totaled $30.00 as of November 15, 2012. (Frank Decl. ¶ 4.) Metro Financial is a separate company from Karma. (11/21/11 Newman Decl. ¶ 14.) Karma is not a subsidiary of Metro Financial, and Metro Financial has no ownership interest in Karma. (11/21/11 Newman Decl. ¶ 14; 12/9/11 Newman Decl. ¶ 12.)

Defendant Newman is a Utah resident and is the president of Metro Financial. He is also the president of Metro National Title, Inc. (11/15/12 Newman Decl. ¶ 16.) He is not an officer, member, or employee of Karma. (12/9/11 Newman Decl. ¶ 11.) Newman does not have any personal ownership interest in Karma. (11/15/12 Newman Decl. ¶ 8.) Newman has, however, donated assets to the Rodney A. Newman 101 Trust, which has an ownership interest in Karma Technologies II, LLC, which owns Karma. (11/15/12 Newman Decl. ¶ 9.) Newman is not a trustee of this trust. 11/15/12 Newman Decl. ¶ 10. Metro Financial and Newman both list Karma II in their Certificates of Interested Entities. (Dkt. 9, 13.)

    C.    Procedural History

Plaintiff filed the initial complaint on September 19, 2011. Defendants Metro Financial and Newman moved to dismiss for lack of personal jurisdiction, and the Court granted these motions

with leave to amend. On September 20, 2012, Plaintiff s filed the First Amended Complaint, which, among other things, added five additional allegations regarding Metro Financial and Newman. These allegations are that: (1) Metro Financial has the same Utah business address as Karma; (2) an article on mortgageorb.com states that Metro Financial released an updated version of Canvas on July 22, 2010; (3) the Canvas website lists Metro Financial and Newman under its contact details; (4) Newman's email addresses has the same domain name as the email address for Karma's Canvas technical support; and (5) Metro Financial and Newman list Karma II in their certificates of interested entities in this case. (FAC ¶¶ 34-42.)

Metro Financial and Newman filed motions to dismiss the FAC for lack of personal jurisdiction in October 2012. After these motions were fully briefed, the Court stayed this case due to Plaintiff's violation of the Stipulated Protective Order. In August 2013, Defendants requested that the Court hear these motions at the August 27, 2012 further case management conference. The Court agreed and held a hearing on August 27, 2013.

## II. Discussion

### A. Legal Standard

A defendant may move to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The plaintiff bears the burden of establishing personal jurisdiction. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). Where the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a primary showing of jurisdictional facts. Id. Although the plaintiff cannot rest on the allegations of the complaint, uncontroverted allegations must be taken as true. Id. The court need not, however, assume the truth of conclusory allegations. Nicosia v. De Rooy, 72 F. Supp. 2d 1093, 1097 (N.D. Cal. 1999). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." Schwarzenegger, 374 F.3d at 800. The plaintiff's evidence must, however, be admissible. Nicosia, 72 F. Supp. 2d at 1097.

"Personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Because California's long-arm statute is coextensive with

4

federal due process requirements, the jurisdictional analyses under California law and federal law are the same. Schwarzenegger, 374 F.3d at 801. "For a court to exercise personal jurisdiction over a non-resident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice." Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

For general jurisdiction over a non-resident defendant, the defendant must engage in "continuous and systematic general business contacts" that "approximate physical presence in the forum state. Id. (citations omitted). This is an exacting standard, and courts consider the defendant's longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets. Courts also consider whether the defendant makes sales, solicits or engages in business, serves the state's markets, designates an agent for service of process, hold a license, has employees, or is incorporated in the forum state. Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1478 (9th Cir. 1986).

For specific jurisdiction: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby involving the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." Schwarzenegger, 374 F.3d at 802. In contract cases, courts use a "purposeful availment" analysis that involves evidence of defendant's actions in the forum, such as executing or performing a contract there. Id. In tort cases, courts generally focus on "evidence of the defendant's actions outside the forum state that are directed at the forum, such as distribution in the forum state of goods originating elsewhere." Id. at 803. A court may find purposeful direction if the defendant committed an intentional act expressly aimed at the forum state that causes harm that the defendant knows is likely to be suffered in the forum state. Id.

B.     Metro Financial's Motion to Dismiss

Metro Financial moves to dismiss on the basis that it does not have sufficient minimum contacts with California for the Court to exercise jurisdiction over it.  Plaintiff counters that Metro Financial has numerous contacts with California.  Plaintiff notes that Metro Financial and its president, Newman, were listed in the contact information section of the Canvas website.  (Request for Judicial Notice ("RJN") Ex. A, Ex. B.)   Plaintiff also points out that in November 2011, Metro Financial's website stated that its scope was nationwide "through direct operations and strategic partnerships."  (RJN Ex. F; see also Ex. E (Metro Financial website stating it provides "Nationwide coverage through our direct network, strategic partners, and service providers).)  Metro National Title's website also contained similar information about Metro Financial that indicated that it considered its scope to be national and that it was more than just a holding company.  (RNJ Ex. H.) As noted in the FAC, the website mortgageorb.com stated that Metro Financial released a version of Canvas.  Plaintiff also submits the declaration of Jeff Bradford, who avers that Metro Valuation licensed Canvas from Karma and that Metro National Valuation is part of the "family of companies" of Metro Financial.  Bradford further avers that Metro Financial is directly involved with Metro Valuation's operations in Utah and nationwide, that Metro Financial has divided its services among multiple businesses, and "as such, Metro National Financial and Mr. Newman are directly involved with the promotion, solicitation, and marketing of the infringing Canvas software."  (Bradford Decl. ¶¶ 11-15.)  Plaintiff also argues that the California contacts of Metro Valuation, and perhaps Karma, can be imputed to Metro Financial for general jurisdiction purposes under the "representative services" doctrine because Metro Valuation acted as Metro Financial's agent in performing important services regarding Canvas.

Plaintiff has not established that Metro Financial has "continuous and systematic" contacts with California, approximating physical presence in the state, that would make the exercise of general jurisdiction appropriate.  Metro Financial is a Delaware LLC registered to do business in Utah with a principal place of business in Salt Lake City.  Metro Financial is not registered to do business in California, has no agent for service of process in California, has no address, employees, or property in California and pays no taxes in California.  Plaintiff does not dispute these facts and

6

does not describe any contacts between Metro and California, let alone continuous and systematic contacts. At most, Plaintiff presents evidence of contacts between Metro Financial and the Canvas software, and Metro Financial and Metro Valuation. As to the former, Plaintiff has not linked this connection to California. Further, Bradford's statements in his declaration about Metro Financial operations are not based on personal knowledge and thus need not be accepted. L.R. 7-5(b); Shakur v. Schriro, 514 F.3d 878, 890 (9th Cir. 2008).[1] The exercise of general jurisdiction requires far more. See, e.g., Marvix Photo, Inc. v. Brand Tech., Inc., 647 F.3d 1218, 1224 (9th Cir. 2011) (finding no general jurisdiction over Ohio corporation despite its numerous links to California because defendant had no offices or staff or registered agent in California and did not pay taxes or market its business there).

Plaintiff has also not established that the Court has jurisdiction under the "representative services" doctrine, a variation of the agency theory of general jurisdiction. Under the agency doctrine, a subsidiary's contacts with the forum state may be imputed to the parent for general jurisdiction purposes where "the subsidiary functions as the parent corporation's representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." Bauman v. DaimlerChrysler Corp., 644 F.3d 909, 902 (9th Cir. 2011) (quoting Doe v. Unocal Corp., 248 F.3d 915, 928 (9th Cir. 2011)). To make that determination, the court asks: if the subsidiary went out of business, would the parent continue the business either by itself or through a new representative? Bauman, 644 F.3d at 920. This test also requires the plaintiff to show that the parent has some element of control over the subsidiary. Id. at 922. For a subsidiary's actions to confer general jurisdiction over the parent, it must provide services beyond "mere solicitation" in the forum state. Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1405 (9th Cir. 1994).

Plaintiff's "representative services" argument fails because even if the Court were to impute

---

[1] Similarly, the article on the mortgageorb.com website stating that Metro Financial released a version of Canvas is inadmissible hearsay. (FAC, Ex. I.) Newman and Metro Financial argue that the article is also wrong to the extent that it ascribes acts to Metro Financial. Moreover, the article acknowledges that Metro Financial is the parent company of Metro National Valuation, the licensee of Canvas. The article also does not describe any contacts between Metro Financial and California.

7

1 Metro Valuation's contacts with California to Metro Financial, there is no evidence that these
2 contacts are continuous and systematic. See Bauman, 644 F.3d at 920 (noting that under certain
3 circumstances, a court may exercise general jurisdiction over a parent company "by virtue of its
4 relationship to a subsidiary that has continual operations in the forum"). Although Metro Valuation
5 licenses the Canvas software from Karma and participates in overseeing and maintaining the Canvas
6 website Karma, Plaintiff has not tied these activities to California, and there is no evidence of the
7 nature or extent of Metro Valuation's contacts, if any, with California. Merely operating a website
8 does not confer general jurisdiction. Marvix Photo, Inc. v. Brand Tech., Inc., 647 F.3d at 1224.
9 Additionally, Plaintiff has not met its burden of showing that Metro Valuation is Metro Financial's
10 agent because it provides Metro Valuation services of "special importance." See, e.g., NuCal Foods,
11 Inc. v. Quality Egg LLC, 887 F. Supp. 2d 977, 995 (E.D. Cal. 2012) (finding the plaintiff did not
12 meet burden of showing agency when there was no evidence that if subsidiary would not have
13 performed function, parent would have). To the extent that Metro Financial is simply a holding
14 company, as Newman avers, it is not subject to general jurisdiction based on the "representative
15 services" doctrine. Sonora Diamond Corp. v. Sup. Ct. of Toulumne Cnty., 83 Cal. App. 4th 523,
16 542-546 (Cal. Ct. App. 2000).

17 There is also no basis for exercising general jurisdiction over Metro Financial based on the
18 actions of Karma. There is no evidence that Metro Financial has any control over Karma; Karma is
19 separate from Metro Financial and has different ownership. (11/15/12 Newman Decl. ¶ 8.)
20 Additionally, there is insufficient evidence that Karma has enough contacts with California to permit
21 general jurisdiction over it. As of November 15, 2012, Karma's sales of Canvas in California totaled
22 $30.00. Given that generating substantial revenue from the sale of products to forum state residents
23 is not sufficient by itself to support the exercise of general jurisdiction, Karma's minimal California
24 Canvas revenue further undercuts any general jurisdiction theory based on Karma. See, e.g., Costa
25 v. Keppel Singmarine Dockyard PTE, Case No. 01-11015, 2003 U.S. Dist. LEXIS 16295, at *40-
26 *41 (C.D. Cal. Apr. 25, 2003).

27 Finally, Plaintiff has not established that the Court has specific jurisdiction over Metro
28 Financial. To prove that Metro Financial purposefully availed itself of the privilege of conducting

1 activities in California, Plaintiff must demonstrate that Metro Financial actually conducted activities
2 there. Plaintiff has not done so. Plaintiff's evidence and allegations about California-related
3 activities involve other defendants. That Metro Financial has the same Utah business address as
4 Karma or was listed as a contact on the Canvas website is not evidence of an act in California.
5 Similarly, there is insufficient evidence that Metro Financial engaged in out-of-state activities
6 directed at California. That Karma sent emails to California residents soliciting the purchase of
7 Canvas is not evidence that Metro Financial directed its activities at California residents.

8 Accordingly, the Court grants Metro Financial's motion to dismiss for lack of personal
9 jurisdiction.

10      C. <u>Newman's Motion to Dismiss</u>

11 Like Metro Financial, Defendant Rodney Newman moves to dismiss on the basis that he
12 lacks the minimum contacts with California necessary for this Court to have personal jurisdiction.
13 Plaintiff asserts the requisite contacts exist because Newman, as president of Metro Financial, held
14 himself out as a contact for Canvas on the Canvas website. Plaintiff also points out that Newman is
15 linked to Karma because Karma and Metro Financial share an address and Newman has assets in a
16 trust that Karma listed in its Certificate of Interested Entities. According to Plaintiff, this evidence
17 "shows that [Newman] is and was intimately and directly involved with Karma and as such, was
18 party to Karma's solicitation business in California."

19 Plaintiff has not met its burden of establishing that the Court has general jurisdiction over
20 Newman. Plaintiff has not identified any contacts between Newman and California. Newman is a
21 Utah resident, does not conduct business in California, does not maintain a residence in California,
22 and pays no California taxes. (12/9/11 Newman Decl. ¶ 3.) Newman has not contacted anyone in
23 California as a result of his contact information being listed on the Canvas website, has not sent
24 emails to California appraisers regarding Canvas, has not made any Canvas sales in California, has
25 not solicited customers in California, and has not sent any advertising materials to California
26 residents regarding Canvas. (11/15/12 Newman Decl. ¶¶ 11-13.)

27 Plaintiff relies on contacts between Karma and California in the form of alleged emails sent
28 by Karma. (RJN Ex. I, Ex. J, Ex. K.) Even if these documents were admissible and the Court took

9

judicial notice of them,[2] Plaintiff has not given the Court any reason to impute Karma's activities to Newman. He does not own Karma and is not an officer, member, or employee of Karma. (12/9/11 Newman Decl. ¶ 8.) That Newman is president of a company that has the same address as Karma is insufficient to establish general jurisdiction, nor does Plaintiff explain how Newman's role as a Canvas contact on a webpage constitutes a contact with California, let alone a substantial one. There is also no reason to impute Karma's activities to Newman simply because he donated assets to a trust that has an ownership interest in an entity (Karma II) that owns Karma. NuCal, 887 F. Supp. 2d at 997 (finding in specific jurisdiction context that trustee who was two steps removed from entity with contacts with forum state did not have minimum contacts); Harris Rutsky & Co. Ins. Serv. v. Bell & Clements Ltd., 328 F.3d 1122, 1134 (9th Cir. 2003) (parent-subsidiary relationship alone not enough to attribute contacts of subsidiary to parent); j2 Global Commc'ns, Inc. v. Blue Jay, Inc., Case No. 08-4254 PJH, 2009 U.S. Dist. LEXIS 1616, at *13 (N.D. Cal. Jan. 5, 2009) ("'[T]he mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents, and employees are suable locally as well.'") (quoting Colt Studio, Inc. v. Badpuppy Enterprise, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999)). Similarly, as Newman points out, there is no evidence that his involvement with Karma was in a personal capacity, and the acts of corporate officers in their official capacities are immaterial for establishing jurisdictional contacts. Colt Studio, 75 F. Supp. 2d at 1111 (C.D. Cal. 1999).

The lack of contacts between Newman and California also undermines Plaintiff's argument that the Court can exercise specific jurisdiction over him. Plaintiff's specific jurisdiction argument is premised on emails that Karma sent to California appraisers soliciting them to purchase the Canvas software. Although the "solicitation emails" were not directly from Newman, Plaintiff conclusorily asserts that Newman was directly involved with the solicitation based on speculation,

---

[2] Plaintiff asks the Court to take judicial notice of numerous exhibits, several of which are printouts of pages of various websites. (Dkt. 98.) Defendants object particularly to the Court taking judicial notice of Exhibits I, J, and K, which are threads or message board postings on appraisersforum.com and Yahoo into which the posters have allegedly copied and pasted emails from Karma. These documents, which are hearsay, are not appropriate for judicial notice because they are not facts generally known within the territorial jurisdiction of the trial court and are not capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(d). The point is largely irrelevant, however, because even taking these exhibits into account would not confer personal jurisdiction.

1 not evidence. The Court therefore grants Newman's motion to dismiss for lack of personal
2 jurisdiction.

### III. Conclusion

The Court dismisses Defendants Metro Financial and Newman without prejudice.

**IT IS SO ORDERED.**

Dated: September 4, 2013

*/s/ Elizabeth D. Laporte*

ELIZABETH D. LAPORTE

United States Chief Magistrate Judge